UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Jacob S.,                                                    Case No. 2:20-cv-00993-AC

                 Plaintiff,                                  OPINION AND ORDER

    v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

               Defendant.

_____

ACOSTA, United States Magistrate Judge:

Plaintiff Jacob S.[1] seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and a judgment in this case in accordance with 28 U.S.C. § 636(c). For the following reasons, the Commissioner's decision is affirmed.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

*Procedural Background*

On June 6, 2017, Plaintiff filed a Title II application for DIB.  Tr. Soc. Sec. Admin. R. ("Tr.") 15, ECF No. 12.  Plaintiff alleged disability based on depression, traumatic brain injury ("TBI"), memory problems, and anxiety.  Tr. 236.  Plaintiff alleged an initial onset date of April 1, 2014, and he later amended his onset date to October 1, 2015.  Tr. 15.  Plaintiff's claims were denied initially and upon reconsideration.  *Id.*  Plaintiff subsequently requested a hearing, which convened on March 20, 2019, before Administrative Law Judge ("ALJ") Mark Triplett.  Tr. 39-74.  Plaintiff appeared and testified at the hearing, represented by a non-attorney representative.  Tr. 15, 39-74.  A vocational expert ("VE"), Francene Geers, also testified.  Tr. 39-74.  On July 1, 2019, the ALJ issued an unfavorable decision denying Plaintiff's claim.  Tr. 15-32.  The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.  Tr. 1-3.

Plaintiff was born in 1983, and he was 31 years old at the time of his amended alleged onset date.  Tr. 30, 232.  He has completed education through the eleventh grade and has past relevant work experience as a construction worker and painter.  Tr. 30, 237.

*ALJ's Decision*

The ALJ determined that Plaintiff meets the insured status requirements through December 31, 2016, and at step one, found that he has not engaged in substantial gainful activity since his amended alleged onset date of October 1, 2015, through the date of the decision.  Tr. 18.  At step two, the ALJ determined that Plaintiff has the following severe impairments:  methamphetamine use disorder; alcohol use disorder; marijuana use disorders; depression; personality disorder; and adjustment disorder with depressed mood.  *Id.*

\ \ \ \ \

At step three, the ALJ determined that Plaintiff's severe impairments, when including his substance use disorders, met the severity of two listed impairments: Listings 12.04 and 12.08. Tr. 19. The ALJ further found that if Plaintiff stopped his substance use, he would continue to have a severe impairment or combination of impairments because "the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities." Tr. 20. The ALJ reasoned, however, that if Plaintiff stopped his substance use, he would not have an impairment or combination of impairments that meets or medically equals any listed impairment. Tr. 21.

Reviewing all the evidence in the record, the ALJ determined that if Plaintiff stopped his substance use, he would have the residual function capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: he is limited to performing simple, routine tasks involving one- to two-step instructions that can be learned in 30 days or less and tolerating occasional contact with coworkers and the general public. Tr. 21-22. At step four, the ALJ found that even if Plaintiff stopped his substance use, he would be unable to perform his past relevant work. Tr. 30.

At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that—if Plaintiff stopped his substance use—a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a floor waxer, wall cleaner, and hand packager. Tr. 31. The ALJ concluded that Plaintiff's substance use disorders are a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped his substance use. Tr. 31. Based on this finding, the ALJ concluded that Plaintiff has not been disabled since October 1, 2015, through the date of the decision, and therefore, the he denied Plaintiff's application for disability benefits. Tr. 31-32.

\ \ \ \ \

*Issues on Review*

Plaintiff contends that the ALJ made the following errors: (1) the ALJ improperly rejected two medical opinions; (2) the ALJ erroneously rejected Plaintiff's subjective symptom testimony; (3) the ALJ's finding that Plaintiff's impairments did not meet Listings 12.04 and 12.08 absent his substance use disorders was not supported by substantial evidence; and (4) the ALJ's computation of Plaintiff's RFC did not include all Plaintiff's mental limitations. Pl. Opening Br. 13-30, ECF No. 18. The Commissioner responds that the ALJ's decision is supported by substantial evidence and is free of legal error. Def. Br. 2, ECF No. 19.

*Standard of Review*

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009. "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

*Discussion*

I.    <u>Medical Opinion Evidence</u>

    A.    *Legal Standards*

For claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168818, 82 Fed. Reg. 5844-01, at *5867-68 (Jan. 18, 2017). Under the new regulations, the ALJ no longer must "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all the medical opinions in the record and evaluate each medical opinion's persuasiveness using factors. *Id.* The two most important factors in determining a medical opinion's persuasiveness are the opinion's "supportability" and "consistency." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must articulate "how [he or she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [his or her] decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.1520c(b)(2).

With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain how he considered other factors, unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.1520c(b)(3). Moreover, in reviewing the ALJ's decision,

the Court must consider whether the ALJ's analysis has the support of substantial evidence.  *See* 42 U.S.C. § 405(j); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

B.    *Analysis*

i.    *Ms. Porterfield*

Plaintiff visited Counselor Hope Porterfield, a Certified Alcohol and Drug Counselor III ("CADC"), Certified Social Worker Associate ("CSWA"), and Certified Gambling Addiction Counselor (C-GACR), in March 2019.  Tr. 27, 950.  Ms. Porterfield found that Plaintiff:  (1) meets the criteria of major depressive disorder; (2) struggles to remember instructions long-term and carry out those instructions; (3) suffers from "mood irregularities due to mental health[, which] negatively impact[s] his ability to interact with peers as well as supervisors"; (4) has mental health impairments that affect his ability to attend work consistently; and (5) would be off-task at least 20% of the work day.  Tr. 950-51, 953.   Importantly, Ms. Porterfield opined that Plaintiff's "past history of substance use is seperate [*sic*] from current difficulties.  Substance use is not active and does not contribute to current mental health impairments."  Tr. 951.

The ALJ rejected Ms. Porterfield's opinion, finding that her "opinion is not persuasive because it is not entirely consistent with or supported by the evidence of record, including [Plaintiff's] longitudinal medical records and objective findings."  Tr. 28.  The ALJ reasoned that although Ms. Porterfield noted Plaintiff's marked deficits in memory and concentration, "those deficits [were] not addressed in his treatment planning.  Rather, his treatment plan focuses on improving coping skills and interpersonal skills.  Nor are such extreme limitations supported by [Plaintiff's] subsequent treatment notes showing improved symptoms with sobriety and regular counseling."  Tr. 28.

\ \ \ \ \

6 – OPINION AND ORDER

Additionally, the ALJ concluded that Ms. Porterfield's opinion regarding Plaintiff's absenteeism and time of task is not supported by the evidence in the record, because Plaintiff "was generally attentive and participatory during individual and group therapy sessions," and because his work activity since the amended alleged onset date has generally ended because of factors other than his mental health impairments.  Tr. 28.  Lastly, the ALJ noted that Ms. Porterfield's finding of "excessive restrictions are inconsistent with [Plaintiff's] documented activities of daily living, which show that [Plaintiff] socializes with others, reads, attends church, and engages in work activity."  Tr. 28.

Plaintiff argues that the ALJ improperly rejected Ms. Porterfield's opinion in four ways. First, the ALJ erred in relying on the lack of treatment planning for Plaintiff's memory and concentration deficits.  Pl. Opening Br. 13-14.  Second, the ALJ improperly found that Ms. Porterfield's opinion was "not supported by [Plaintiff's] subsequent treatment notes showing improved symptoms with sobriety and regular counseling," because this finding runs afoul Ninth Circuit precedent, *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 1014).  Pl. Opening Br. 15 (quoting Tr. 28).  Third, the ALJ did not sufficiently explain his rationale for rejecting Ms. Porterfield's opinion regarding excessive absenteeism and time of tasks.  Pl. Opening Br. 16-17.  Finally, the ALJ's reliance on Plaintiff's activities of daily living ("ADLs") was not a legitimate basis to reject Ms. Porterfield's opinion, because the record contained no information detailing Plaintiff's work activity after his alleged onset date.  *Id.* at 17-18.

The ALJ's rejection of Ms. Porterfield's assessment was supported by substantial evidence. A medical opinion is generally less persuasive when it is inconsistent with the remaining evidence in the record.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Additionally, another factor that an ALJ may consider, but is not required to explain, is the extent of a medical provider's treatment

relationship with the claimant. *See* 42 C.F.R. § 404.1520c(b)(2) (explaining that ALJs "may, but are not required to, explain how [they] considered the factors in paragraphs (c)(3) and (c)(5) of this section"); 404.1520c(c)(3)(iv) (detailing the factor of the "[e]xtent of the treatment relationship"). As such, when evaluating the persuasiveness of Ms. Porterfield's opinion, the ALJ appropriately considered the lack of a treatment plan concerning Plaintiff's memory and concentration deficits. That consideration was appropriate under the regulations.

Further, Plaintiff's reliance on *Garrison* is misplaced. In *Garrison*, the Ninth Circuit held that, in the context of mental health issues, an ALJ may not "reject *a claimant's testimony* merely because symptoms wax and wane in the course of treatment." 759 F.3d at 1017-18 (emphasis added). Here, the ALJ did not point to subsequent treatment notes to reject Plaintiff's testimony; rather, the ALJ merely concluded that Ms. Porterfield's medical opinion was not persuasive because it was not consistent with or supported by medical evidence as a whole.

Finally, the ALJ sufficiently explained his rationale for rejecting Ms. Porterfield's opinion regarding absenteeism and time of focus, and he appropriately considered evidence of Plaintiff's work activity. In rejecting Ms. Porterfield's opinion, the ALJ explained that "though the claimant's objective findings show the claimant was at times tangential, he was generally attentive and participatory during individual and group sessions." Tr. 28. Moreover, evidence in the record demonstrates that while Plaintiff's work activity did not rise to the level of substantial gainful activity, he did work during his period of alleged disability. Tr. 453, 472, 723, 725, 745, 772, 846, 853, 855, 857, 859, 876. Thus, the ALJ sufficiently considered the supportability of Ms. Porterfield's opinion with the record as a whole, and his rejection of Ms. Porterfield's opinion was based on substantial evidence and free from legal error.

\ \ \ \ \

           ii.       *Dr. Whitehead*

Plaintiff had a consultative psychological evaluation with Dr. Michelle Whitehead, Ph.D., in May 2019. Tr. 28, 954. The ALJ found persuasive Dr. Whitehead's opinions that Plaintiff: (1) has adequate persistence and pace but has intermittent problems with focus and attention; (2) has stimulant use disorder, amphetamine type, in sustained remission and alcohol use disorder in sustained remission; (3) "has problematic character traits that have caused clinically significant distress and impairment in social, occupational, and other areas of functioning"; and (5) has "made suicidal ideation reports often seeking attention" and that "likely behavior changes [are] due to multiple head injuries." Tr. 28, 956, 57. The ALJ noted that these findings were persuasive because those findings are "generally consistent with the record as a whole." Tr. 28.

Dr. Whitehead also noted, however, that Plaintiff suffered from "anger management issues, disturbance of mood and motivation, attention seeking, [and] problem personality traits" and had marked limitations in social functioning and responding appropriately to workplace changes. Tr. 29, 961-62. Dr. Whitehead further explained that Plaintiff's "past h[istory] of [alcohol] & Drug Abuse has caused impairment in social & occupation activities." Tr. 962. The ALJ did not find these portions of Dr. Whitehead's opinion persuasive.

The ALJ reasoned that, although Dr. Whitehead acknowledged that Plaintiff's history of substance use caused social and occupational issues, he did "not indicate the degree of impairment caused by [Plaintiff's] substance use." Tr. 29. The ALJ reasoned that the evidence in the record supported marked limitations in social functioning and adapting or managing oneself during periods of substance use, but that "such extreme limitations are not supported during periods of sobriety." *Id.* The ALJ recognized that Plaintiff presented as angry, hostile, frustrated, and irritable, and engaged in threatening or assaultive behaviors during periods of substance use, but

found that "such symptoms are significantly diminished and largely resolved during period of sobriety." *Id.* In sum, the ALJ rejected this portion of Dr. Whitehead's opinion for not being supported by the other evidence in the record.

Plaintiff argues that the ALJ's reasons for rejecting Dr. Whitehead's opinions were neither clear and convincing, nor specific and legitimate reasons supported by substantial evidence in the record. Pl. Opening Br. 19. Plaintiff asserts that Dr. Whitehead's report does address Plaintiff's functioning in the absence of substance use, because Dr. Whitehead diagnosed Plaintiff with stimulant use disorder–amphetamine type and alcohol use disorder, both in sustained remission. *Id.* at 20 (citing Tr. 957). Plaintiff contends that while Plaintiff's substance use exacerbates his signs and symptoms, his depression and personality disorder persist during periods of sobriety. *Id.* at 21. Further, Plaintiff contends that if the ALJ had any valid concerns that Dr. Whitehead's opinions included limitations caused by alcohol or substance use, the ALJ had a duty to make an appropriate inquiry. *Id.* at 20 (citing *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010)).

The ALJ did not err in rejecting the portion of Dr. Whitehead's opinion. In reaching this conclusion, the ALJ looked at the supportability and consistency of Dr. Whitehead's opinions of Plaintiff's functioning absent substance use. He appropriately considered other evidence, such as Plaintiff's work activity and other evidence concerning his functioning without substance use, to conclude that Dr. Whitehead's opinion was not consistent with and supported by other evidence in the record. Tr. 29, 839-41, 847. Notably, other evidence in the record was inconsistent with Dr. Whitehead's opinion and demonstrated that Plaintiff's functioning improved when he was not using substances (Tr. 839-41, 847) and he was able to work after his alleged onset date, Tr. 723, 725, 772, 846. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the

evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). In sum, the ALJ did not commit legal error in rejecting the portion of Dr. Whitehead's medical opinion.

II.    Subjective Symptom Testimony

   A.    *Legal Standard*

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo*, 871 F.3d at 678; 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that reasonably could be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Factors that the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, and inconsistencies in testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

   B.    *Analysis*

At the March 20, 2019, disability hearing before the ALJ, Plaintiff testified that he was unable to work full-time because he could not concentrate, had trouble remembering things, and

was unable to show up for work due to his depression and anxiety. Tr. 61. In applying the first step of the credibility framework, the ALJ found that "if [Plaintiff] stopped his substance use, his medically determinable impairments could reasonably be expected the produce some of the alleged symptoms." Tr. 24. In applying the second step, however, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.*

Plaintiff alleges the ALJ failed to make specific, clear, and convincing findings to justify his rejection of Plaintiff's testimony. Pl. Opening Br. 26. Plaintiff asserts the ALJ's rejection of is testimony solely because it is not substantiated by objective medical evidence is legal error. *Id.* at 27. Further, Plaintiff contends the ALJ failed to sufficiently explain how his interpretation of the medical evidence warranted an adverse evaluation of Plaintiff's testimony. *Id.* at 27.

The ALJ offered specific, clear, and convincing reasons for rejecting Plaintiff's testimony about the intensity and limiting effects of his mental impairments in the absence of substance use. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ did not rely exclusively on an absence of objective medical evidence in rejecting Plaintiff's testimony. Rather, he reasoned that Plaintiff's testimony of the effect of his mental impairments was inconsistent with (1) evidence from the medical record; (2) evidence of his daily activities, which included work activity after the amended alleged onset date; and (3) evidence demonstrating that Plaintiff stopped working for reasons other than his mental impairments.

First, the objective medical record conflicted with Plaintiff's testimony. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). Although subjective symptom

testimony may not be wholly rejected based on a lack of corroborating objective medical evidence, medical evidence is still a relevant factor in determining the severity of a claimant's symptoms. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).   Here, the ALJ appropriately considered inconsistences between Plaintiff's alleged limitations and the medical evidence in the record.

For instance, the ALJ reasoned that Plaintiff frequently failed to follow through with treatment, but his mental health impairments improved when he did not use substances and engaged in therapy and medication management.  Tr. 26.  Plaintiff's medical history demonstrated instances of refusing mental health treatment and multiple month-long gaps in his mental health treatment and medication use.  Tr. 416, 420-21, 790, 791, 819-20.  Although Plaintiff still noted some symptoms of depression and hopelessness when he was sober, he received counseling on a regular basis and was able to perform work activities around the home.  Tr. 839-41, 847.  Because an ALJ can consider the type and effectiveness of medication and other treatment that a claimant takes to relieve his symptoms when weighing a claimant's allegations, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), the ALJ appropriately considered the medical record in weighing Plaintiff's testimony.

Second, the ALJ also discounted Plaintiff's testimony because it was inconsistent with his daily activities.  Tr. 27.  When assessing credibility, an ALJ "may consider, among other factors, . . . the claimant's daily activities."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("[A]n ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled.").  Notably, Plaintiff performed some work activities after his amended alleged onset date.  Plaintiff

helped remodel a home in September 2017, Tr. 723, 725, performed part-time work in November 2017, Tr. 772, and painted houses, laid carpet, and built reclaimed furniture in July 2018, Tr. 846.

Finally, the ALJ discounted Plaintiff's testimony because his testimony was inconsistent with evidence demonstrating that he stopped working for reasons unrelated to his mental impairments. When weighing a claimant's testimony, the ALJ may use the fact that a claimant stopped work for reasons other than his impairments as a sufficient basis for discounting subjective symptom testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). For example, evidence in the record indicated that Plaintiff "report[ed] going from job to job and struggle[ed] to have stable employment due to unreliable transportation and lack of skills to navigate additional barriers." Tr. 853. Evidence further demonstrated that Plaintiff was unable to keep employment due to a lack of transportation or because of his construction projects ended—not because of his mental impairments. Tr. 453 (noting that Plaintiff reported that he was unable to keep a painting job due to unreliable transportation); Tr. 472 (reporting Plaintiff "states that he cannot get a job because he has no driver's license related to his prior DUIs"); Tr. 745 (reporting Plaintiff "finished his work at a construction job, and now has no other jobs lined up").

The court finds the evidence of Plaintiff's medical evidence, daily activities, and reasons for not securing employment, contradicts Plaintiff's testimony and therefore constituted convincing reasons to reject Plaintiff's testimony. Although Plaintiff may disagree with the ALJ's interpretation of the record, the ALJ's interpretation is supported by substantial evidence, which precludes the Court from engaging in second-guessing. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

III.    Step Three Findings Absent Substance Use

If an ALJ finds a claimant is disabled, but drug addiction or alcoholism is a contributing factor material to the disabling condition, then the claimant is disqualified from receiving benefits. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). An "ALJ must conduct a drug abuse and alcoholism analysis . . . by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol." *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007)(citing20 C.F.R. § 404.1535(b)). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Id.* (citing 20 C.F.R. § 404.1535(b)).

At step three, the ALJ must determine whether a claimant's impairment meets or equals an impairment listed in the Listing of Impairments ("the Listings"). *See* 20 C.F.R. Part 404, Subpt. P, App. 1. A mere diagnosis is insufficient to meet or equal a listed impairment. S*ee* 20 C.F.R. §§ 404.1525(d), 416.925(d). To meet a listed impairment, a claimant must establish that he "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3).

Listing 12.04 concerns depressive, bipolar, and related disorders, and Listing 12.08 concerns personality and impulse-control disorders. 20 C.F.R. Part 404, Subpt. P., App. 1, § 12.00(A)(1). A claimant's mental disorders must satisfy both paragraphs A and B of the stated listing: Paragraph A includes the medical criteria, and Paragraph B provides the functional criteria used to assess how the claimant's mental disorder limits his functioning. *Id.* § 12.00(2)(a), (b). Paragraph B considers a claimant's ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. . . .

function independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(a)(b). Further, to satisfy the Paragraph B criteria, a claimant's "mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.*

Here, the ALJ determined that, when considering Plaintiff's substance use disorders, he met Listings 12.04 and Listing 12.08. Tr. 19. The ALJ further concluded, however, that if Plaintiff stopped his substance use, he would not have an impairment or combination of impairments that meets or medically equals any of the listed impairments. Tr. 21. In particular, the ALJ reasoned that Plaintiff did not satisfy the Paragraph B criteria of either listing absent substance use, because he had only "moderate" limitations in the functional criteria. Tr. 21-22.

Plaintiff contends that the ALJ incorrectly concluded that Plaintiff's impairments do not meet the listings, because the ALJ underestimated the severity of Plaintiff's limitations in the Paragraph B criteria. Pl. Opening Br. 23-24. He argues that both Dr. Whitehead and Dr. Porterfield's opinions were consistent in establishing that Plaintiff had marked limitations in the Paragraph B criteria of Listings 12.04 and 12.08. Pl. Opening Br. 24-25. As such, Plaintiff argues that the ALJ erred, because if the ALJ had properly credited Dr. Whitehead's and Ms. Porterfield's opinions, then the he then would have found that Plaintiff satisfied the Paragraph B criteria of both listings absent Plaintiff's substance use. Pl. Opening Br. 24-26.

The court disagrees. In asserting this argument, Plaintiff solely contends that, if the ALJ had not rejected the Ms. Porterfield's and Dr. Whitehead's medical opinions, then the ALJ erred in its Step Two finding. The court previously concluded above that the ALJ did not err in rejecting Ms. Porterfield's opinion and portions of Dr. Whitehead's opinion concerning Plaintiff's mental functioning in the absence of substance use. Moreover, the ALJ's findings that Plaintiff did not satisfy the Paragraph B criteria of either listing were supported by substantial evidence. *See* Tr.

21-22.  Accordingly, the ALJ did not err in rejecting the medical opinion evidence and relied on substantial evidence in making the step-three determination absent Plaintiff's substance use.

IV.    Plaintiff's RFC

At the hearing, the ALJ asked the VE, Ms. Geers, a hypothetical question.  Tr. 66.  The hypothetical involved an "individual [who] can perform simple, routine tasks, involving one to two step instructions that can be learned in 30 days or less.  The individual can tolerate occasional contact with coworkers and the general public."  Tr. 66.  The ALJ then asked Ms. Geers whether, under that hypothetical set of facts, that individual could perform any of the past work identified as Plaintiff's past work.  Tr. 66-67.  Ms. Geers answered "no".  Tr. 67.

Ms. Geers also testified based on her 35 years of experience as a vocational expert.  She testified that an individual who is off-task more than ten percent of the workday is not able to maintain employment.  Tr. 68.  Additionally, Ms. Geers testified that if an individual misses more than one day a month of work, that individual would not be able to maintain employment.  *Id.*

Plaintiff contends that the ALJ erred in calculating Plaintiff's RFC and posing hypothetical questions to the VE based on Plaintiff's RFC, because the ALJ erroneously rejected Ms. Porterfield's and Dr. Whitehead's medical opinions.  Pl. Opening Br. 29-30.  In determining a claimant's RFC, an ALJ considers "all the relevant evidence in [the] case record."  20 C.F.R. § 416.945(A)(1); *see Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017).  The court already has concluded, however, that the ALJ did not err in rejecting Ms. Porterfield's or Dr. Whitehead's medical opinions.  Thus, the ALJ's calculation of Plaintiff's RFC was based on substantial evidence, and the ALJ did not commit legal error in computing Plaintiff's RFC or posing hypothetical questions to the VE.

\ \ \ \ \

*Conclusion*

For the reasons stated above, the Commissioner's final decision is AFFIRMED, and this action is DISMISSED.

IT IS SO ORDERED.

DATED this 29th day of December, 2021.

JOHN V. ACOSTA
United States Magistrate Judge